Yulsman *v.* DuBois, Appellant.

Argued October 9, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Ralph S. Croskey,* of *Croskey & Edwards,* for appellant.

*Harry C. Liebman,* for appellee.

OPINION BY KELLER, P. J., December 8, 1942:

Benjamin Yulsman filed this bill in equity against Leon A. DuBois for an accounting and for the payment of his share of certain moneys alleged to have been received by the latter on behalf of a partnership composed of the two of them, and not accounted for by him to the firm. The defendant filed an answer denying the material averments of the bill.

At the trial the plaintiff produced testimony supporting the averments of the bill. The defendant offered no testimony on his own behalf but contended that plaintiff had failed to produce sufficient proof of the allegations in the bill.

The trial judge, sitting as a chancellor, found that the plaintiff had sustained the averments of his bill as respects seven separate items or accounts, aggregating $2025, which had been paid to defendant, (or to his son, by his direction), on behalf of the partnership, but not accounted for by him to the partnership, and ordered him to pay the plaintiff one-half thereof, or $1012.50, with interest from the respective dates received, and the costs of suit.

Exceptions to the findings, conclusions and decree nisi were dismissed by the court in banc and a final decree was entered in accord with the decree nisi. Defendant has appealed to this court with respect to five of the items or accounts, aggregating $1615, on which he was directed to pay the plaintiff the sum of $807.50 and interest as above.

These items or accounts may be listed as follows:

Clifton & Hamilton ............. $565
Lester Piano Company ............ 500
George Miller ................... 300

George Miller, Inc. .............. 200
Philadelphia Hupmobile, Inc.[1] .... 50 $1615

The partnership carried on business as certified public accountants and tax consultants, under the firm name of Yulsman & DuBois. Prior to the formation of the partnership in April 1923, each of the partners had been separately engaged in the same business, and it was orally agreed between them that each partner had the right to retain the fees received from his former clients, but in other respects the profits and losses were to be equally divided. This arrangement lasted for less than a year, the partners then agreeing that all fees received for services, no matter from whom derived, were to become partnership funds and be equally divided between them. In January 1932 the parties verbally agreed to re-establish their original agreement and this arrangement was followed until the partnership was dissolved on October 1, 1937.

All of the above accounts were admittedly partnership accounts.

### CLIFTON & HAMILTON ACCOUNT.

Taking them up in their order, we come first to the Clifton & Hamilton account, as to which the chancellor found that defendant failed to account to or pay over to the partnership $565 of the fees received for services rendered by the partnership. This item was based on the tenth paragraph of the bill, which averred that plaintiff was entitled to an accounting from the defendant of all sums of money received by the defendant, *or by anyone else at his direction,* for services rendered by and in behalf of the partnership to Clifton & Hamilton, Inc. and its affiliated companies.

---

[1]The amount of this item was $200, of which one-half or $100 was directed to be paid plaintiff. The defendant admitted the correctness of $150 of this amount and paid plaintiff $75, as representing his share, but contested the balance.

The defendant admitted, when called as under cross-examination, that he had authorized his son, Leon A. DuBois, Jr., to endorse checks given by said Clifton & Hamilton in payment for services rendered by said partnership, which were made payable to Yulsman & DuBois, and to cash the said checks and receive the proceeds.

It appeared that five such checks, for $50 each, were so received and cashed during the year 1935. Of these, two were accounted for to the firm, leaving three, amounting to $150, not accounted for or paid over to the firm. During 1935 young DuBois regularly received from the firm, his salary as an employee—approximately $25 a week—and it was so entered on their books.

During the year 1936, DuBois, Jr. received from Clifton & Hamilton checks aggregating $425 and cash $15, which was noted in the invoice statement accompanying a check for $35, or $440 in all. This added to $150 in 1935, makes $590, of which $565 was charged against defendant. But the books of the partnership show no payments in 1936 to DuBois, Jr. by the firm for his services except $80 in January, $5 in June and $47 on December 3. The payments by Clifton & Hamilton in 1936 were $50 in February, $50 in March, $40 in April, $50 in May, $50 in June, $50 in July, $50 in August, $50 in October and $50 on December 15, totalling $440.

A review of all the testimony fails to convince us that during the year 1936, young DuBois received and retained anything over and above his salary as an employee of the partnership, which, the defendant, when called as under cross-examination, testified he was authorized to do. The books of the firm do not show it and the testimony does not support such a finding.

Accordingly the charge against the defendant on this account should be reduced from $565 to $150.

## LESTER PIANO COMPANY, GEORGE MILLER AND GEORGE MILLER, INC. ACCOUNTS.

These accounts may be considered together. The firm of Yulsman & DuBois acted as *tax consultants* for George Miller and his affiliated interests, Lester Piano Company and George Miller, Inc. Up until 1930 the plaintiff did the detail work for these clients and after that date the defendant took care of their work.

It was shown that on June 29, 1934 Lester Piano Company drew its check No. 3143 for $500 to the order of L. A. Dubois "in settlement of services in full to date" (Plaintiff's Ex. No. 6), which was endorsed by the defendant and paid. No entry of the receipt of this money was made on the books of the partnership. In view of the admitted fact that Lester Piano Company was a client of the partnership, we are of opinion that the receipt of this check and its collection by the defendant without accounting therefor to the partnership placed upon him, at the least, the burden of producing evidence, satisfactory to the chancellor, that he had individually rendered other services, apart and distinct from the services rendered by the partnership and not within the scope of the partnership business, which were paid for by this check. This he failed to do and the evidence justified the action of the chancellor, affirmed by the court, in charging him with this amount.

On July 13, 1934 George Miller drew his check for $300 to the order of L. A. DuBois which was endorsed by the defendant and paid July 13, 1934. No entry of the receipt of this money was made on the partnership books.

An examination of the books of George Miller showed an account with Leon A. DuBois in which he was charged with a payment to him of $300 on July 13, 1934 and was credited on December 31, 1934, with "Legal & Bus. Exp. $300".

Here, again, it was admitted that George Miller was a client of the partnership. George Miller's books showed that the check for $300 to defendant was balanced against a charge for services by him. The fact that the *client* in entering this charge called it "Legal and Business Expenses", could not affect the rights of the partnership. DuBois was not a lawyer—so far as the record shows—Miller's bookkeeper said the credit was given for services rendered by defendant. The business of a tax consultant might easily be termed by a layman *legal* services or expenses. In fact two of Clifton & Hamilton's checks to the partnership, Nos. 1394 (Northwestern National Bank) and 7404 (Broad Street Trust Company), which were admittedly given for services rendered by the partnership, were described in the invoice statement attached to the checks as given for "Legal and Acct." services. As in the Lester Piano Company item, we are of opinion that this evidence placed on the defendant, at the least, the burden of producing evidence, satisfactory to the chancellor, that he had rendered other services, distinct and apart from the services rendered by the partnership, and not within the scope of the partnership business, which were paid for by this check. This the defendant failed to do, and the evidence justified the action of the chancellor, affirmed by the court, in charging him with the amount of the check, $300.

On March 13, 1936 George Miller, Inc. drew its check No. 342 on the Market Street National Bank for $200, payable to Leon A. DuBois which was endorsed by defendant and deposited to his account in the Cheltenham National Bank on March 14, 1936 and collected through the Federal Reserve Bank on March 16, 1936. No entry of the receipt of this check by the defendant was made on the books of the partnership, and the chancellor charged defendant with its receipt as partnership funds. As to this item there was no testimony,

oral or documentary, that tended to show that it was given the defendant for services rendered by him or the partnership. The books of George Miller, Inc. were not produced. While this check may have been given for services, it may also have been a loan—there were such transactions between the parties—or some payment other than for services rendered. The burden rested on the plaintiff to prove his case and as respects this item we do not find sufficient evidence to support the chancellor's finding.

PHILADELPHIA HUPMOBILE ACCOUNT.

Under this account, three checks of Philadelphia Hupmobile, Inc. were produced which had not been entered on the books of the partnership:

No. 291 dated July 26, 1935, to the order of Yulsman & DuBois, for $75. The notation in the attached invoice statement showed it was given "On account $75".

No. 752, dated September 21, 1935, to the order of Yulsman & DuBois for $75. The notation on the attached invoice statement showed that this check also was given "On acct.".

Both of these checks were endorsed "Yulsman & DuBois by L. A. DuBois" and were apparently cashed by the bank on which they were drawn or by the drawer of the check. The chancellor charged the defendant with these checks, $150, and the defendant did not appeal as to them.

The third check, No. 1349, dated December 18, 1935, was drawn to the order of L. A. DuBois—but in the attached invoice statement, appeared the notation "Yulsman and DuBois account". The check was cashed by defendant at the bank on which it was drawn—Northwestern National Bank—and it was not accounted for to the partnership. It was properly charged against defendant.

Accordingly the decree of the court below will be

modified by reducing the Clifton & Hamilton charge from $565 to $150, and by striking out the George Miller, Inc. item of $200, thus reducing the total of the charges against defendant because of the above five items from $1615 to $1000, with interest from the respective dates received, of which $500, with interest as aforesaid, is payable by defendant to plaintiff and judgment is entered accordingly. We affirm the decree as respects the payment of the costs in the court below.

As modified herein, the decree of the court below is affirmed. Each party to pay his own costs on appeal.